539 A.2d 804

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Douglas K. WEBSTER, Appellant.**

Supreme Court of Pennsylvania.

Submitted Sept. 25, 1987.

Decided March 30, 1988.

**3.** *Id.*

John H. Corbett, Jr., Chief—Appellate Div., Office of the Public Defender, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Deputy Dist. Atty., Edward M. Clark, Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

This is an appeal by allowance from the December 27, 1985, order of the Superior Court affirming the judgments of sentence imposed by the Court of Common Pleas of Allegheny County. Appellant, Douglas Webster, was convicted by a jury of murder of the first degree[1] and two violations of the Uniform Firearms Act.[2] The convictions resulted from a shooting incident which occurred on April 5, 1983, and resulted in the death of Gwendolyn Jones. Following the denial of his post-verdict motions, Appellant was sentenced to life imprisonment on the murder conviction and concurrent sentences of two and one-half (2½) to five (5) years for each firearm violation. Represented by new counsel, Appellant filed an appeal to the Superior Court raising various claims of trial error and ineffectiveness of his trial counsel. The Superior Court affirmed the judgments of sentence in an unreported memorandum opinion.[3] Appellant then petitioned this Court for allowance of appeal, which was granted. We now reverse the order of the Superior Court.

On this appeal, Appellant raises a number of issues among which are: whether the trial court's comments on the expertise of the defense witness invaded the province of the jury and deprived Appellant of a fair trial and whether the trial court's failure to address the defense expert by his

1. 18 Pa.C.S. § 2501(a).
2. 18 Pa.C.S. §§ 6103 and 6106.
3. *Commonwealth v. Webster,* 353 Pa.Super. 648, 506 A.2d 1339 (1985) (unreported memorandum opinion).

proper title prejudiced appellant.[4]

The record reveals that prior to the incident in question, Appellant, a former state policeman, had filed criminal charges against the victim, Gwendolyn Jones, and her boyfriend, Robin Ford. The charges related to a burglary of Appellant's residence. A preliminary hearing had been scheduled for the morning of April 5, 1982, before District Justice Betty Lloyd. Appellant arrived at the magistrates' office that morning and had conversations with police officer Fantaski and appeared clear and coherent. While in the magistrate's office, Appellant, without warning, approached Ms. Jones and said, "[t]his is what you need," aimed a gun at her head and fatally shot her. Appellant was immediately searched and a knife was found in his possession. Later, when questioned, Appellant stated that, having been a police officer, he was aware of his constitutional rights. Nevertheless, his *Miranda* warnings were read to him and thereafter he freely gave a statement in which he admitted the shooting. Several eyewitnesses gave testimony that Appellant acted normally and was calm and rational during this period. Appellant was rewarned of his rights prior to giving a recorded statement.

The record is clear that, at the time of the shooting, Appellant acted normally and was calm and rational. The testimony of the interrogating officers was that Appellant was calm, coherent, cooperative, and without signs of mental or physical problems at the time he gave his initial statements and at the time he gave his recorded statement.

We focus upon Appellant's contention that he was deprived of a fair trial because of the trial court's improper challenge to the expertise of a crucial defense witness, thereby invading the province of the jury, and because of the judge's failure to address such expert witness by his proper title. The central issue at trial concerned the mental

4. In view of our disposition of this appeal remanding for new trial, it is unnecessary for us to consider the remaining issues raised by Appellant.

capacity of Appellant at the time of the shooting as viewed by expert witnesses for the defense and prosecution. Appellant called Thomas M. Eberle, Ph.D., a clinical and forensic psychologist, who stated that he diagnosed Appellant as suffering from schizophrenia, paranoid variety, chronic, in a somewhat obsessive-compulsive personality. He testified that Appellant had a bright-normal I.Q. and had no evidence of organic abnormality. However, he concluded that Appellant was legally insane at the time of the shooting. (N.T. 171, 172).

The Commonwealth called Donald J. Coleman, M.D., a board certified neurologist and psychiatrist. He also concluded that Appellant suffers from schizophrenic illness paranoid type chronic. Dr. Coleman was of the opinion that Appellant knew the consequences of his act and that he certainly was capable of planning the act and that Appellant knew it was wrong. (N.T. 277–286).

The Commonwealth called a second expert, Melvin P. Melnick, M.D., also a board certified psychiatrist, who agreed with the diagnosis of Dr. Coleman. He was of the opinion that Appellant knew the nature and quality of his act and understood the consequences and wrongfulness thereof. He explained the differences between his diagnosis and that of Dr. Eberle.

Appellant points to the following exchange which occurred between the defense's expert witness, Dr. Thomas Eberle, and the trial judge, during direct examination, as unfairly prejudicial and requiring a new trial:

Q. Dr. Eberle, in your professional opinion and with your experience and educational background, you obviously are familiar with what is called the M'Naughton Rule?

A. Yes.

Q. Were you able to form an opinion as to whether or not Douglas Webster on April 5, 1982 was functioning under M'Naughton—

THE COURT: That is not proper to ask this witness. He is not capable of rendering M'Naughton—

MR. BOTULA: Yes, he is, Your Honor—

THE COURT: Well, we have other witnesses who are more qualified—

MR. BOTULA: He is perfectly competent to testify to that, Your Honor.

THE COURT: Okay, there will be other witnesses who will testify who are more qualified.

(N.T. 173, 74).

A trial judge should act with absolute impartiality. *Commonwealth v. England,* 474 Pa. 1, 375 A.2d 1292 (1977). "Judges should refrain from extended examination of witnesses; they should not during the trial indicate an opinion on the merits, a doubt as to the witnesses' credibility, or to do anything to indicate a leaning to one side or the other without explaining to the jury that all these matters are for them." (Citations omitted.) *Commonwealth v. Seabrook,* 475 Pa. 38, 44, 379 A.2d 564, 567 (1977). However, as we stated in *Commonwealth v. Goosby,* 450 Pa. 609, 611, 301 A.2d 673, 674 (1973):

> Every unwise or irrelevant remark made in the course of a trial by a judge, does not compel the granting of a new trial. *A new trial is required when the remark is prejudicial; that is, when it is of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial.* (Citations omitted.) (Emphasis in original.)

While the statements by the trial judge were concededly improper, our inquiry must focus upon the question of whether they deprived Appellant of a fair and impartial trial. The Superior Court's holding that the remarks made by the trial judge were not prejudicial to the Appellant was based upon the rationale that the witness was testifying as to sanity and he is a doctor of psychology and not a medical

doctor who is certified in the field of psychiatry, as were the Commonwealth experts. Superior Court reasoned that the trial court, perhaps a bit too spontaneously, was simply expressing the traditional view that when an expert testifies with respect to sanity it is commonly a psychiatrist. *See, Commonwealth v. Woodhouse,* 401 Pa. 242, 164 A.2d 98 (1960). However, this nuance was never explained by the trial judge to the jury. The jury was clearly given the impression that because Dr. Eberle was a psychologist rather than a psychiatrist, his testimony was not deserving of the same weight as the testimony of the psychiatrists.

■ While the question of the qualification of a witness to express an expert opinion is one for the discretion of the trial judge, whose ruling thereon will not be reversed absent an abuse of discretion, his credibility, of course, is for the jury to pass upon. *Commonwealth v. Mangini,* 478 Pa. 147, 386 A.2d 482 (1978); *Commonwealth v. Bennett,* 471 Pa. 419, 370 A.2d 373 (1977). In the instant case, upon the request of Appellant, Dr. Eberle was appointed by the court, in fact by the same judge who questioned his qualifications to render an opinion under M'Naughton; this was the very purpose for which he was appointed. The trial judge did not challenge his qualifications at the time of appointment nor when the defense called him as an expert. The Commonwealth neither challenged the qualifications of Dr. Eberle, nor objected to his testimony. We think that any reservations held by the judge as to his qualifications should have been expressed at the time of appointment, or prior to his being permitted to testify at trial.

At trial, after Dr. Eberle first recited his extensive professional qualifications as a clinical and forensic psychologist, he then proceeded to review Appellant's mental state without challenge by the court. He next testified, unchallenged by the court, that Appellant met the criteria for legal insanity. It was only when trial counsel asked Dr. Eberle to address Appellant's mental state with regard to M'Naughton, that the court challenged his qualifications to

render such an opinion. Although Dr. Eberle was permitted to give his opinion under M'Naughton, and the court, in its charge reiterated Dr. Eberle's qualifications to the jury and emphasized that it was for the jury alone to decide whether to accept or reject the expert testimony, we believe these cautionary instructions could not have reaffirmed the jury's role in determining credibility, thereby minimizing the impact of statements made by the court. The judge had already told the jury that Dr. Eberle was not as qualified in the field as the Commonwealth experts. He misled the jury to the prejudice of the Appellant. The prejudicial effect was emphasized by the fact that the court did not refer to Appellant's expert as "Doctor" in its charge. Although the charge indicated that the witness was a psychologist and a professional whose credibility was to be determined solely by the jury, the cumulative effect of the court's challenge to the expert's qualifications and failure to address the expert by his earned title in the charge clearly left the jury with the impression that Dr. Eberle's opinion was not as reliable as the Commonwealth's experts'. This was extremely prejudicial to the Appellant, since his sole defense was one of insanity. His actions in killing the victim were undisputed and he pled no justification other than his purported delusions. His entire defense consisted of his own testimony, and the psychiatric testimony of his expert witness, which was denigrated by the judge's expressed opinion that Dr. Eberle was not as qualified as the Commonwealth witnesses. Appellant was entitled to a fair opportunity to present his defense of insanity to the jury without the trial judge usurping the province of the jury to determine the credibility of the witnesses. On this record, we do not believe that Appellant had such an opportunity, consequently, he is entitled to a new trial.

Accordingly, we reverse the order of the Superior Court affirming the judgment of sentence and remand the case to the Court of Common Pleas of Allegheny County for a new trial.

HUTCHINSON, Former J., did not participate in the consideration or decision of this case.

McDERMOTT, J., files a dissenting opinion in which FLAHERTY, J., joins.

McDERMOTT, Justice, dissenting.

In *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), this Court noted that "the testimony of [a] medically trained psychiatrist is preferable to that of the psychologist who has received no education in medicine." *Id.*, 500 Pa. at 35 n. 8, 454 A.2d at 947 n. 8. We further noted that the competence of a psychologist to testify regarding insanity was still unresolved. *See Commonwealth v. Terry*, 513 Pa. 381, 394 n. 15, 521 A.2d 398, 405, n. 15 (1987). Thus, the comments which were made by the trial judge were not without foundation, in that he merely questioned the competence of the psychologist to testify, and stated what we have recognized as a fact, that a psychiatrist is more competent to testify than a psychologist. I think the trial judge would have been well within his bounds to have refused to allow this psychologist to testify at all; then we would only be concerned with whether that was an abuse of discretion. However, since the trial judge, despite his legitimate concerns, allowed the psychologist to testify, the Court is now saying he erred in voicing those concerns. I must dissent from this decision.

Similarly, I find no merit in the relatively innocuous decision to designate appellant's witness as other than a doctor. The terms used instead, such as "expert", "psychologist", and "professional", are certainly not terms of disrespect, and I do not believe that the judge's omission of the term "doctor" affected the jury's deliberation.

FLAHERTY, J., joins in this Dissenting Opinion.