**Commonwealth** of the
Northern Mariana Islands,
Plaintiff/Appellee,
v.
Godwin **Brel**,
Defendant/Appellant.
Appeal No. 93-037
Criminal Case No. 93-0011
December 1, 1994
Amended February 13, 1995

Submitted on Briefs October 28, 1994

Counsel for appellant: Brien Sers Nicholas, Saipan.

Counsel for appellee: Cheryl M. Gill, Assistant Attorney General, Saipan.

BEFORE: DELA CRUZ, Chief Justice, and VILLAGOMEZ and ATALIG, Justices.

VILLAGOMEZ, Justice:

■ A jury found Godwin Brel guilty of aggravated assault and battery under 6 CMC § 1203(a). Brel appeals his conviction. We have jurisdiction pursuant to 1 CMC § 3102(a). We affirm.

## ISSUES & STANDARD OF REVIEW

■ Brel presents the following issues for our review:

1. Whether the trial court abused its discretion when it dismissed the original information without prejudice under Com. R. Civ. P. 48(a).[1]

2. Whether the trial court abused its discretion by permitting cross-examination testimony about Brel's character from a witness who did not testify as a character witness for Brel. The trial court's evidentiary decisions are reviewed for an abuse of discretion.[2]

3. Whether the government violated Brel's due process and fair trial rights by making certain comments during rebuttal closing argument. Because the defendant did not contemporaneously object to the allegedly improper prosecutorial comment, we review the statement to determine whether it was improper and, if so, we assess whether it constitutes plain error.[3]

## FACTUAL & PROCEDURAL BACKGROUND

On August 3, 1992, the government filed an information (Criminal Case No. 92-0136) charging Brel with aggravated assault and battery, a felony.

A jury trial was set for October 26, 1992. On the day of trial, the government moved to dismiss the case without prejudice, subject to refiling within six months, because the complaining witness could not travel from Palau to Saipan due to an impending typhoon. The court granted the motion over Brel's objection, but subject to a ninety-day refiling period, after which the dismissal would be *with* prejudice.

On January 22, 1993, the government timely refiled a new information (Criminal Case No. 93-0011). In February, Brel moved to dismiss Criminal Case No. 93-0011 for violation of Com. R. Crim. P. 48(b), for pre-indictment delay, and for lack of a speedy trial. The government responded that there had been no bad faith or prejudicial delay. The court denied Brel's motion.

At trial, defense counsel asked two prospective jurors during voir dire if they believed it was possible for a witness to take an oath to tell the truth, and then not tell the truth, or lie.

Brel called as a witness his common law wife, who owns the bar where the incident giving rise to this case took place. On cross-examination, the government asked her whether she feared Brel. Brel objected and the government argued that the question went to bias and motive to lie. Overruling Brel's objection, the court noted that the government had not asked for specific dates or "anything of that nature." Transcript of Proceedings at 302-03, 302A, *Commonwealth v. Brel*, Crim. No. 93-0011 (N.M.I. Super. Ct. Mar. 23, 1993).

Brel's wife testified that she did not fear Brel, and the prosecutor then asked "[h]aven't you asked for help before?" The witness responded that sometimes she would "call the police to come and . . . check [her] at the bar because [she was] having [a] problem with . . . Godwin."[4] Brel immediately made two unsuccessful motions for a mistrial on the ground that his wife's testimony constituted character evidence admitted in violation of Com. R. Evid. 404.

During closing rebuttal, the prosecutor made several statements which Brel alleges were improper. Brel did not object to the statements at trial.

The jury convicted Brel of aggravated assault and battery. This appeal followed.

## ANALYSIS

### I. Dismissal without Prejudice

■ Brel contends that the dismissal of the original information without prejudice pursuant to Com. R. Crim. P. 48(a) was made in bad faith and was contrary to the public interest. We disagree.

On or before October 22, 1993, the government informed the court that the trial could not go forward due

---

[1] *Cf. United States v. Dyal*, 868 F.2d 424, 426 (11th Cir. 1989) (abuse of discretion is standard of review of dismissals pursuant to Fed. R. Crim. P. 48).

The government contends that Brel waived his objection to the court's dismissal of Criminal Case No. 92-0136 under Com. R. Crim. P. 48(a) because he did not challenge it below. What he did challenge was the filing of Criminal Case No. 93-0011, arguing for dismissal under Com. R. Crim. P. 48(b). In the alternative, the government urges us to review the propriety of the Com. R. Crim. P. 48(a) dismissal only for plain error.

We find no waiver. Although Brel did not object to the dismissal of Criminal Case No. 92-0136, he did object to it being dismissed *without* prejudice. The objection preserved the issue for appeal, and the standard of review is abuse of discretion.

[2] *See Commonwealth v. Kaipat*, 2 N.M.I. 322, 327 (1991); *Pennsylvania v. Ragan*, 645 A.2d 811, 818 (Pa. 1994).

[3] *See Commonwealth v. Saimon*, 3 N.M.I. 365, 380 (1992).

[4] On April 29, 1993, the government filed Criminal Case No. 93-0062 against Brel, charging him with the assault and battery of his wife. Excerpts of Record at 8. The case was dismissed with prejudice on May 3, 1993, after Brel's wife recanted during a preliminary hearing. *Id.* at 9.

to the absence of the complaining witness. Supplemental Excerpts of Record at 43, ¶¶ 8-10. The government moved to dismiss on October 26, 1992, the day set for trial, prior to the empaneling of a jury. The government explained that the complaining witness could not be present and his medical records in Palau could not be obtained for trial without a release from him.

From the date of the incident to October 21, 1992, the complaining witness underwent medical treatment on Guam and recuperated in Palau. The government purchased airline tickets for Agent Sokau to accompany the complaining witness from Palau to Saipan on October 23, 1992. *Id.* at 47, 48. However, Typhoon Brian prevented them from traveling to Saipan.

The trial court found the government's reason for requesting dismissal "reasonable" and granted the motion to dismiss pursuant to Com. R. Crim. P. 48(a). The court also limited the period for refiling of the information to three months rather than the six months the government requested.[5] Transcript of Pretrial Proceedings at 9 (Oct. 26, 1992). We see no bad faith, and the trial court did not abuse its discretion.

## II. Admission of Character Testimony

Brel asserts that the trial court erred in permitting his wife to testify about an incident during which she called the police to help her deal with Brel. We find no abuse of discretion.

■ Under Com. R. Evid. 404 "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[6] Here, the government's "other purpose" in questioning Brel's common law wife about calling for help with Brel was to demonstrate that his wife's fear of and relationship with him were a source of bias and a motive to testify untruthfully in his favor. Thus, the government sought to impeach Brel's wife's credibility[7] by introducing evidence of a prior instance of her inconsistent conduct, which evidence happened to implicate Brel's character.

Brel's wife's answer about calling the police was prejudicial because it suggested Brel was prone to act threateningly or violently. Nevertheless, the court permitted the jury to hear the testimony for impeachment purposes, noting that the government had not asked about specific details, such as the date of the prior incident. *See* Transcript of Proceedings at 302A.

■ Before admitting relevant evidence of prior misconduct, a trial court must conduct a Com. R. Evid. 403[8] analysis, balancing the probative value of the evidence against the danger of unfair prejudice. If the danger of unfair prejudice does not substantially outweigh the evidence's probative value, the court may admit the evidence.[9]

■ The court carefully considered the parties' arguments for and against admission of the evidence during a sidebar conference. Brel's wife's testimony about her telephone call to the police for assistance with Brel was certainly admissible to impeach her credibility.[10] In light of this and our review of the record as a whole, we conclude that the court adequately weighed the prejudicial effect of Brel's wife's testimony against its probative value, thereby satisfying the requirements of Com. R. Evid. 403.[11]

■ The court should have given a limiting instruction as to the purpose for which Brel's wife's testimony was being admitted. This omission does not constitute reversible error, however, because Brel failed to request such an instruction.[12]

---

[8] Com. R. Evid. 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

[9] *Cf. United States v. Sangrey*, 586 F.2d 1312, 1314-15 (9th Cir. 1978) (discussing Fed. R. Evid. 404(b) and 403); *see also Saimon*, 3 N.M.I. at 375 (discussing trial court's application of Com. R. Evid. 403).

[10] *See Ragan*, 645 A.2d at 820 (holding admissible, for purpose of impeaching testimony by showing bias, a girlfriend's testimony that she harbored defendant even though she knew he was a fugitive for a previous crime).

[11] *See Sangrey*, 586 F.2d at 1315.

[12] As the *Sangrey* court stated with respect to this issue:

We do question the failure of the trial judge to

---

[5] Brel's trial ultimately took place within ten months of the filing of the original information.

[6] Com. R. Evid. 404(b).

[7] Under Com. R. Evid. 607, any party may attack a witness's credibility. *Commonwealth v. Kaipat*, 2 N.M.I. at 328.

### III. Government's Rebuttal Closing Argument

 We review for plain error only "in those circumstances in which a miscarriage of justice would otherwise result."[13] A statement reviewed for plain error must be viewed in light of the entire record, because reversal for prosecutorial misconduct will not be granted unless the misconduct is so pronounced and persistent that it permeates the trial's entire atmosphere.[14]

Brel bases his allegation of prosecutorial misconduct on three statements the prosecutor made during rebuttal closing argument. After considering each statement separately below, we conclude that the challenged remarks do not, in the context of the whole record, rise to the level of prosecutorial misconduct.

#### A. Characterization of Defense Counsel's Closing Argument

 The prosecutor began closing rebuttal by saying "[w]ish I had a broom, ladies and gentlemen, cause if I did, I'd sweep away all of the baloney, all the hooey that you've had to listen to for the last 45 minutes to an hour." Transcript of Proceedings at 442.

The prosecutor's labeling of the defense counsel's closing as "baloney" and "hooey" did not, as Brel suggests, implicate the defense counsel's veracity and personal integrity. Such labeling was not an improper response to the defense counsel's characterization of the evidence.[15]

---

give the jury a limiting instruction as to the use of the challenged testimony. Because no limiting instruction was asked for by defendant, we do not find the absence of such an instruction to be reversible error. But in view of the prejudicial effect of [this witness's] testimony [that defendant raped her prior to raping the complaining witness] might have had on the jury, it would have been appropriate for the trial judge, *sua sponte*, to have given a limiting instruction.

*Id.*

[13] *Saimon,* 3 N.M.I. at 381 (emphasis omitted) (quoting *United States v. Young,* 470 U.S. 1, 15, 105 S. Ct. 1038, 1046, 84 L. Ed. 2d 1, 12 (1985)).

[14] *Saimon, supra.*

[15] *See id.* at 383 ("[i]t is not necessarily improper for the prosecutor to comment that defense counsel's characterization of the evidence is incorrect").

#### B. Reference to Brel as Having "Lied"

 The prosecutor told the jury that

[Defense counsel] was correct in telling you that the credibility of the witnesses is something you have to evaluate. One way you can evaluate it is, is their story today consistent with their story 10 months ago. Nothing [the complaining witness] said on that stand was ever controverted by [defense counsel]. Ever. [The complaining witness] gave a statement 10 months ago. Nothing controverted. He told—tells the same story today that he told 10 months ago. Is he credible? Yes.

. . . .

Let's talk about Mr. Brel though. He said things on that stand different than what he told the police 10 months ago. Some of them, I'll agree, were trivial. The point is not that the details were trivial but that he's telling inconsistent stories. Inconsistent, ladies and gentlemen. And, remember what [defense counsel] asked you, during voir dire, is it possible, do you believe that somebody could get up on that witness stand, under oath, and lie? Remember that? I believe each and every one of you said, yes, that's possible. And, this is the person who fulfilled that possibility. He got up on that witness stand and he lied.

Transcript of Proceedings at 443-44. The prosecutor's use of the word "lied" to describe what Brel did on the stand did not constitute misconduct.

 Where, as here, a defendant takes the stand, his or her truthfulness and veracity become "the proper subject of the prosecutor's closing argument."[16] A prosecutor may not go so far as to express his or her personal opinion about a defendant's guilt, but he or she may make any reasonable inference supported by the record.[17] In addition, a prosecutor may call the defendant a liar during closing argument, as long as the term

---

[16] *Id.* at 385.

[17] *See id.* at 385-86.

is not used excessively[18] and does not "inject a highly prejudicial personal opinion of [the] defendant's credibility into evidence."[19]

By choosing to testify, Brel opened the door to comments about his veracity. During her closing rebuttal, the prosecutor first made reference to inconsistencies between Brel's statements to the police and his testimony at trial. Then the prosecutor expressly noted that the inconsistencies were trivial, but that "the point is . . . that [Brel is] telling inconsistent stories." *Id.* at 443. Finally, she referred to the defense counsel's voir dire query about the possibility of a witness lying under oath and concluded that Brel fulfilled the possibility because "[h]e got up on that witness stand and he lied." *Id.* at 444. The prosecutor never used the term "liar" and did not repeat the word "lied."

## C. Reference to Defense Counsel's Closing Argument

█ The prosecutor also said "I want to make sure that when you listen [to the jury instructions given by the judge], you listen carefully, and you ask yourself, why did [the defense counsel] leave some instructions out[?] Why did he leave some definitions out[?] Was he trying to confuse you? Only you can answer that." *Id.*

At first glance this appears to exceed the bounds of permissible commentary on the defense counsel's characterization of the evidence. The argument goes to the defense counsel's statement of the law, implying that he intended to mislead the jury. However, when considered in context, the comment was a permissible response to the defense counsel's closing argument.

During his closing, the defense counsel said:

> I'm going to comment on the law. The law is going to come from the Judge. I always give a word of caution when I start, you heard [from the prosecutor] that what the lawyer[s] say is not evidence. That what the lawyers—the evidence comes from right there. Same with the law. If what I say doesn't seem to match with what the Judge tells you, you listen to the Judge. But I'm not going to try and intentionally deceive you cause that doesn't help [Brel] at all. I want you to know the law.

*Id.* at 412.[20] In response to this statement, the prosecutor admonished the jury to listen to the judge's instructions on the law, and not to instructions presented by the defense counsel. The prosecutor also suggested that the defense counsel omitted certain portions of the law, and that the jury should not be misled by this. These remarks may have been hard blows, but they were not "foul."[21]

Brel asserts that the prosecutor's remarks discussed above, "[g]iven the record of this case," Appellant's Brief at 17, constitute misconduct. As to "the record," Brel draws our attention only to the bad conduct testimony elicited during cross-examination of Brel's wife. As previously discussed, the trial court did not err in admitting, for impeachment purposes, Brel's wife's testimony about calling the police for assistance with Brel. Therefore, the prosecutor's statements during closing, viewed in the context of closing argument and the whole record, were not improper and did not compromise Brel's right to a fair trial.

### CONCLUSION

For the reasons set forth above, we **AFFIRM** the trial court's judgment of conviction.

---

[18] *Id.* at 385 n.4 (dictum) (citing *United States v. Spivey*, 859 F.2d 461, 466 (7th Cir. 1988)).

[19] *Ragan*, 645 A.2d at 829.

[20] Defense counsel later gave his rendition of the elements of aggravated assault, which drew an unsuccessful misstatement of the law objection from the government. *See* Transcript of Proceedings at 423, *Commonwealth v. Brel*, Crim. No. 93-0011 (N.M.I. Super. Ct. Mar. 23, 1993).

