J-S23021-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                             :            PENNSYLVANIA
                                             :

          v.                                    :
                                             :

KYLE VO                                         :
                                           :

            Appellant                :    No. 2327 EDA 2016

Appeal from the Judgment of Sentence Dated July 18, 2016
In the Court of Common Pleas of Chester County
Criminal Division at No(s):  CP-15-CR-0001077-2015

BEFORE:    OLSON, J., SOLANO, J., and MUSMANNO, J.

MEMORANDUM BY SOLANO, J.:             **FILED OCTOBER 16, 2017**

Appellant Kyle Vo appeals from the judgment of sentence imposed after a jury convicted him of the rape of Marguerite ("Maggie") Kane while she was unconscious and of aggravated indecent assault without consent, sexual assault, indecent assault of an unconscious person, and indecent assault without consent.[1]  We affirm.

Ms. Kane testified at trial that, on the night of January 21, 2015, into the morning of January 22, 2015, in a dormitory at West Chester University, she and her roommate, Maria Urban, had been drinking alcoholic beverages and went to see their friends, Tyler Claycomb and Steven Massaro, in the men's dormitory room.  N.T., 4/18/16, at 97.  Ms. Kane and Ms. Urban did not stay long in Mr. Claycomb and Mr. Massaro's room because the women

---

[1]  18 Pa.C.S. §§ 3121(a)(3), 3125(a)(1), 3124.1, 3126(a)(4), and 3126(a)(1), respectively.

were "both very drunk and nobody else was." *Id.* at 96. Ms. Kane described herself as "very drunk at that point" but still walking and talking. *Id.* at 97. She testified that at the time, she "wasn't very aware of how alcohol is measured, and . . . how much was enough to get you drunk. And [she] wasn't very familiar with alcohol itself." *Id.* at 89. She added that she had never been as drunk before as she was on the night of January 21 into January 22, 2015 — she was the "drunkest [she] had ever been." *Id.* at 89, 104.

Ms. Kane testified that after she and Ms. Urban returned to their dormitory room, they, Appellant, and Mark Dukes "who lived across the hall" from Ms. Kane and Ms. Urban, had a conversation about sexual experiences, and she told them that she was a virgin. N.T., 4/18/16, at 80, 85, 114-15. The others asked her "why [she] was a virgin" and her "decision-making in planning to be a virgin. And [she] told them that [she] wanted [her] first time to be very special. . . . [She] stuck to the fact that [she] wanted to stay a virgin." *Id.* at 114-15. She continued:

> My family and I are all Catholic, and I really value that. And my religion is very important to me. And if I didn't save it for marriage, I wanted it to at least be something of value. And I really valued saving it for something that mattered.

*Id.* at 116. Ms. Kane testified that she "talked about that with them for a bit of time." *Id.* Ms. Kane stated that she was "already pretty intoxicated at that point in time." *Id.* at 125.

Ms. Kane also testified that Mr. Dukes then offered to have sex with her, but, "despite the fact that [she was] intoxicated, [she was] still not interested in having sex with Mark." N.T., 4/18/16, at 125. He had returned to his dormitory room and "sent [her] text messages asking to have sex." *Id.* at 117. She testified that she showed the texts to Ms. Urban, and then:

> [They] talked about it and . . . laughed at him, like, he thought I would go and have sex with him after I just said that I didn't want to. . . . I thought it was really funny that after that big spiel about not giving it up, that he would then ask me to go have sex.

*Id.* She testified that she turned him down in a text message reply. *Id.* at 122-23. She asserted that she rejected his offer because she was not ready to have sex with anyone at that point.

Ms. Kane then explained that Appellant asked her if she "wanted more to drink," and she "said, yes, because [she] didn't think [she] was as drunk as [she] was, in retrospect. So he left to go and get alcohol from his room." N.T., 4/18/16, at 126. Ms. Kane testified that before Appellant returned, her friend, Catherine Senior, entered Ms. Kane's dormitory room but did not drink any alcohol. N.T., 4/19/16, at 59. Ms. Kane stated that Appellant returned with "shots of vodka from a water bottle that he brought," then "he offer[ed] to go get more alcohol." N.T., 4/18/16, at 126-27. Ms. Kane asserted that, when Appellant returned again:

> He gave me one shot and then said that we were going to go shot for shot, meaning that we were going to drink at the same

> time. And he gave — he gave me at least more than three shots, but I'm not exactly sure how many he gave me.

*Id.* at 127. She testified that those shots made her "so out of it" and "very, very drunk." *Id.* at 129. Ms. Kane testified that, "[a]fter those shots," she "felt the drunkest." N.T., 4/19/16, at 50; *see also id.* at 59, 63.

Ms. Kane testified that eventually Appellant sat on her bed and began rubbing her thigh. N.T., 4/18/16, at 135-36, 139, 141. She said that her thoughts were disconnected and she had difficulty processing what was happening. *See id.* at 142, 145. She remembers that Appellant moved her shorts and stuck his finger in her vagina, after which her hand "flopped backward," she felt pain, and then "blacked out," so that she does not remember clearly. *Id.* at 145-46. She testified that she felt limp and could not move. *Id.* at 147. When she awoke, she found Appellant on top of her, naked, with his penis in her vagina. *Id.* at 147-50. She testified that she went in and out of consciousness but remembers waking again to find Appellant behind her, where he was naked and "grinding her," and waking another time to find him with his penis inside her vagina. *Id.* 151-53. She testified:

> And I realized, oh, he is having sex with me. And the pain that I felt, I then knew what was going on. And I don't remember anything after that.

*Id.*

When asked if she consented to sexual intercourse with Appellant, Ms. Kane answered negatively. N.T., 4/18/16, at 142-44, 150. She testified

that Appellant never said anything to her about wanting to have sex with her, nor even made any flirtatious comments to her; it never occurred to her that Appellant wanted to have sex with her. She added that she never said anything to him to suggest that she was interested in having sex with him, and it never crossed her mind that sex was a possibility with Appellant or anyone else that night. *Id.* at 143-44.

Ms. Kane asserted that as soon as Appellant left her room, she told Ms. Urban that she was raped — "And Maria was telling me, you know, oh, my first time wasn't good either. And I'm, like, no, I was raped." N.T., 4/18/16, at 157-58.

Catherine Senior testified that Ms. Kane was "pretty drunk" on the night of the incident. N.T., 4/19/16, at 122. Ms. Senior also testified that the next morning Ms. Kane called her and asked her to come to her dormitory room; when Ms. Senior arrived, Ms. Kane told her that "she doesn't want to have sex and that he did it anyway." *Id.* at 132.

Steven Massaro testified that, when Ms. Kane entered his dormitory room, "she was intoxicated and she had [a] mason jar which had liquid in it that I presumed was alcohol[.]" N.T., 4/19/16, at 244. Tyler Claycomb corroborated this testimony, stating that Ms. Kane had "a mason jar with a straw in it, so it had alcohol in it," from which she continued to drink after she entered his room. *Id.* at 261-62. He described Ms. Kane as already drunk when she entered his dormitory room. *Id.* at 261-62, 264.

Mr. Claycomb further testified that he went to see Ms. Kane in her dormitory room later that night, by which time she was "very drunk." *Id.* at 266.

Chase Adams, a roommate of Mr. Massaro and Mr. Claycomb, testified that when he saw Ms. Kane that night —

> She was very drunk. And Cate [Senior] was there trying to, like, help her get in her pajamas to go to bed. And she was, like, fighting with Cate and, like, giggling and being really loud. So she was very intoxicated at that point. . . . She was falling around, didn't really have a sense of anything going on. Like, she had fallen off her chair and was, like, laying on the floor laughing for a good five minutes. So it was easy to tell that she was very intoxicated. . . . [She was s]lurring words[.]

N.T., 4/19/16, at 305-06, 320. Mr. Adams also testified that prior to the night in question, Ms. Kane had told him, Mr. Claycomb, and Ms. Senior that she had no sexual experience, that she was waiting for sex, and that she was not a believer in casual sex. *Id.* at 297.

Mark Dukes testified that he saw alcohol in Ms. Kane's dormitory room. N.T., 4/20/16, at 42. He also confirmed that, during the night of the incident, Ms. Kane told Appellant, Ms. Urban, and him that she was a virgin, was waiting for the right person, and was not "rushing into it." *Id.* at 45-46.

Christopher Burke, Appellant's roommate, testified that on the morning of January 22, 2015, Appellant told Mr. Burke that he had sexual relations with an unnamed girl the night before and had taken her virginity. N.T., 4/20/16, at 63-64.

Maria Urban testified that Ms. Kane was "really drunk." N.T., 4/20/16, at 78. She also testified that Ms. Kane told Appellant that she did not want

to have sex. *Id.* at 83-84, 91. Ms. Urban further testified that she, herself, eventually passed out from alcohol consumption, but that when she awoke during the night, she saw Appellant having sex with Ms. Kane. She described Ms. Kane as looking "limp" and "dead." *Id.* at 92. She added that she did not hear Appellant nor Ms. Kane speak while he was having sex with her. *Id.* Ms. Urban stated that she did not see Ms. Kane kiss Appellant, stroke him, or move at all. *Id.* at 92-93. Ms. Urban admitted that, due to her inebriation, she "didn't put two and two together that [Ms. Kane] wasn't moving. [She] just didn't add it up." *Id.* at 94. She described the experience as "really weird and confusing." *Id.* Ms. Urban continued that, when Ms. Kane awoke, she was "really upset, really confused" and said she did not know what happened. *Id.* at 95. Ms. Urban added that, when Ms. Kane realized what had happened, she immediately said that she had not wanted to have sex. *Id.* at 95-96.

Twelve hours after these events, Ms. Kane, under police supervision, made a recorded call to Appellant in an attempt to gain admissions from Appellant relating to his criminal conduct. During this recorded call, the following conversation occurred:

> [Ms. Kane:] But, but like what, what did, what did, did you, did you use a condom yesterday?
>
> [Appellant:] We, I didn't even come, so it, I don't even, it was like, it wasn't even that long.
>
> [Ms. Kane:] What happened, I don't remember?

[Appellant:]      Wait, can you, like, um, I'm like actually making blankets for like kids at a hospital right now, I'm not even lying, it's at Sykes [Student Union] right now.

[Ms. Kane:]      Dude, I, I need to know what happened, I'm not sure[. W]hat if I'm pregnant?

[Appellant:]      We had . . . You're not pregnant, I didn't. . . I swear to god, you're not pregnant.

\*     \*     \*

[Ms. Kane:]      Did you use a condom?

[Appellant:]      What?

[Ms. Kane:]      Did you use a condom?

[Appellant:]      Yes, the second time.

\*     \*     \*

[Ms. Kane:]      So you didn't use a condom the first time?

[Appellant:]      No.

[Ms. Kane:]      What if I got a disease or something?

[Appellant:]      I don't, I just got tested . . . at Sykes, at that thing like two weeks ago . . . not two weeks ago, two months ago.

[Ms. Kane:]      How dare you?  You knew that I didn't want to have sex, I literally said that, yesterday, in front of you.

[Appellant:]      You said you did . . . I was passed out and then you like . . . yeah, I was actually passed out and you woke up, woke me up . . .

[Ms. Kane:]      Kyle, I was drunk yesterday . . . you got me drunk.

[Appellant:]      I was . . . I was passed out.

[Ms. Kane:]    You got me drunk and had sex with me when you knew that I didn't want to have sex . . . while I was sober, I said that to you.

\*    \*    \*

[Appellant:]    Like, literally, like the first time, it was for two minutes and I was, like I was so drunk I literally passed out on you, and I woke up, you woke me up . . . wait, I actually have to leave right now . . . like I can't have this . . .

\*    \*    \*

[Ms. Kane:]    Without a condom?

[Appellant:]    What?   No, the second time I actually had a condom.

[Ms. Kane:]    OK, I don't remember anything that happened.

[Appellant:]    You weren't even blacked out, you told me you weren't even that drunk . . .

[Ms. Kane:]    But, I did say I was drunk?

[Appellant:]    Wait, I, like can I actually, like because I'm in the middle of something right now, I'm actually making blankets for like kids in the hospital. . .

\*    \*    \*

[Appellant:]    [T]he second like I had a condom the second time and I still didn't come.

\*    \*    \*

[Appellant:]    Can you wait, for like an hour and a half, because this is pretty important, and I didn't, like you're not pregnant . . . I, there's (unintelligible)

\*    \*    \*

[Ms. Kane:]    [W]hat if I'm pregnant, dude?   What if you actually did, what if you did come and you, and I'm pregnant?

[Appellant:]　　　You're not pregnant, because I didn't come . . .

[Ms. Kane:]　　　'Cause you didn't use a condom . . .

　　　　　　　*　　*　　*

[Appellant:]　　　I'll get a Plan B pill if you're really, like if you're concerned . . . I don't want you to freak out . . .

[Ms. Kane:]　　　Do I need to go to the hospital?

[Appellant:]　　　You don't need to go to the hospital . . . oh my god.　Like, you want me to go to Wawa, like after I'm done and get you Plan B?

[Ms. Kane:]　　　What do you mean, go and get me Plan . . . are you saying that I have to go and take a freakin' birth control pill?

[Appellant:]　　　If you're worried about it, I'll go out and like walk to Rite-Aid and get you, like a Plan B pill if you're worried about it.

　　　　　　　*　　*　　*

[Ms. Kane:]　　　You did it to me, though . . . while I was drunk . . . I wouldn't have had to be worried about it.

　　　　　　　*　　*　　*

[Ms. Kane:]　　　Were you drunk?

[Appellant:]　　　Yeah . . . (Unintelligible) . . . like are you sure . . .

　　　　　　　*　　*　　*

[Ms. Kane:]　　　Yeah, I wanna know, like, why?　When I had already told you that I didn't wanna have sex, I had multiple times said that I'm a virgin . . .

　　　　　　　*　　*　　*

[Appellant:]　　　[Y]ou told me, you're like, I wanna have sex . . .

- 10 -

[Ms. Kane:]     When I was drunk?

[Appellant:]     Like, I asked you, like, I asked you, like are you sure?  And then you told me like the second time you weren't even drunk . . .

[Ms. Kane:]     While I was . . . but I already . . . while I had been drinking, and after I had been drinking you asked me if I wanted to have sex and I said yes?

[Appellant:]     Yeah, because we were making out and, then like, it happened.

[Ms. Kane:]     It happened?

[Appellant:]     Maggie, do you want me to, like honest to god, this is like if you're worried, like if you're pregnant, like . . .

[Ms. Kane:]     What if I am pregnant?  What happens if I am pregnant?

[Appellant:]     That's what I'm saying . . . do you want me to go to Wawa and get you Plan B?

[Ms. Kane:]     Are you saying that if I am pregnant, you, you would want me to just go and get a birth control pill?

[Appellant:]     That's what happens, that's, do you know what Plan B is?

[Ms. Kane:]     It's a contraceptive.

[Appellant:]     Exactly . . . do you want, like if you're worried about it, that much . . . I didn't come in you . . .

[Ms. Kane:]     I'm saying, if I'm already preg . . .

[Appellant:]     You're not pregnant . . . you can't get pregnant in . . .

[Ms. Kane:]     How do you know I'm not pregnant?

[Appellant:]    Oh, my god, you it just . . . you're not already pregnant. . . . Do you want me to get you Plan B?  Do you want me to?

[Ms. Kane:]    Why do you keep saying that?  That, that's . . . why is that the only option if I was pregnant?

[Appellant:]    What . . . I don't know (Unintelligible)

[Ms. Kane:]    What if the condom didn't work . . . condoms break, you know?

[Appellant:]    It didn't break . . . well, it didn't . . .

[Ms. Kane:]    How do you know the condom didn't break?

[Appellant:]    Alright, do, like, alright . . .

*    *    *

[Ms. Kane:]    Well, I wanna know what happens if I am pregnant.

[Appellant:]    I will get you Plan B and then you won't be pregnant.  You can't be pregnant after you take Plan B.

[Ms. Kane:]    So I should go to the hospital?

[Appellant:]    You don't get . . . I can get Plan B at CVS . . . people get Plan B all the time.

[Ms. Kane:]    So, you're gonna buy me Plan B?

[Appellant:]    Yeah . . . I will spend forty bucks on Plan B for you if you're worried . . . I don't want you to worry about it.

*    *    *

[Ms. Kane:]    What did you do with, what did you do with the condom?

[Appellant:]    I threw it out.

*    *    *

[Ms. Kane:]     Yeah . . . 'cause I wanna know if it worked. 'Cause you took, like you took my virginity, dude, and if I'm pregnant from that?  You take my virginity . . .

[Appellant:]     Then I will get you, if you're worried about being pregnant, then I will get you Plan B.  I have to go right now, though.

Tr. of Jan. 22, 2015 Consensual Call to Appellant by Ms. Kane at 1-10, attached to Trial Ct. Op., 10/19/16, as Ex. 1 (some formatting altered).[2]

Appellant was eventually arrested, charged, and tried before a jury from April 18 to 20, 2016.  On the second day of Appellant's trial, the Commonwealth made an oral motion *in limine* for "evidentiary guidance" as to the use of the transcript of the telephone call:

[Commonwealth]: During the course of the conversation, it's our position [Appellant] made a number of out-of-court self-serving statements that are inadmissible unless the Commonwealth chooses to bring them into evidence.  The Commonwealth can bring them in under the Hearsay Rule of a statement by party opponent.  But the defense cannot offer an out-of-court statement of their own client at trial.  So I wanted to — my understanding is that . . . before we finish this witness and before we start cross, that we're in agreement that the defense cannot cross-examine [Ms. Kane] about that phone call, or those out-of-court statements by [Appellant].

N.T., 4/19/16, at 3.  In response, Appellant argued that there were "grounds for appropriate cross-examination" of Ms. Kane, because there were:

things Miss Kane said during that conversation as showing action inconsistent with someone who had just been raped by [Appellant] less than 24 hours prior.  [W]hat Miss Kane said during that conversation she can be subject to cross-examination on.

_____

[2] We understand that the ellipses within the lines of the transcript signal pauses, not the removal or editing out of words.

- 13 -

N.T., 4/19/16, at 5.[3]  The trial court reserved its ruling pending a review of

the transcript.  *Id.* at 8.

After reviewing the transcript, the court prohibited its use.  Appellant

then preserved his argument for the record:

> I think it's certainly not a question of admissibility, it should be admissible in as much as what Miss Kane said during that conversation, it's a question of weight, what weight that the jury should give it, if any, which is subject of them as the fact finders to make that determination.  They can certainly choose to accept it and find it to be exculpatory.  In that respect I think that the evidence must be admitted for purposes of cross-examination to show conduct that is inconsistent, quite frankly, with the actions of a person who was just raped not more than 12 hours earlier when given the opportunity to speak directly with the defendant. That's why I provided the [trial c]ourt with a copy.
>
> Certainly the copy of the transcript of what was said in the tape it's clear she never once uses the word rape during that conversation.  On many occasions she inquires about pregnancy. On many other occasions she inquires about the use of a condom.  On several occasions she inquires about birth control or Plan B.  This is clearly a conversation where she's showing that her concern is with an unwanted pregnancy or perhaps a sexually transmitted disease but not rape.  I think that that is exculpable evidence that should be put before the jury and allow them to make the decision on what weight to give it.

N.T., 4/19/16, at 88-89.  Thus, Appellant argued that Ms. Kane's conduct

and her statements after the rape were inconsistent with her trial testimony,

---

[3] Appellant also posited that his recorded statements could be presented to the jury with a cautionary instruction.  N.T., 4/19/16, at 5.  The Commonwealth countered that Appellant could not introduce his side of the out-of-court conversation and no cautionary instruction would "fix that."  *Id.* at 8.  "It[']s his opportunity to try to get his version of events in front of the jury without actually having to testify."  *Id.*  Appellant responded that the court could exclude his statements.  *Id.*

and he therefore should have been permitted to use the transcript to impeach her.

After Appellant's conviction, he was sentenced on July 18, 2016, to six to twenty years' confinement followed by five years' probation. Appellant did not file any post-trial or post-sentence motions. On July 21, 2016, Appellant filed a notice of appeal and retained different counsel for the appeal.

Appellant now raises one issue for our review:

> Whether the trial court erred by not permitting counsel the opportunity to cross-examine the alleged victim Marguerite Kane about inconsistent statements she made during a wire intercept with the Appellant the afternoon after the incident where such exclusion of evidence violated the Appellant's constitutional due process right to present a full and complete defense under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution?

Appellant's Brief at 3.

"The admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion." ***Commonwealth v. Towles***, 106 A.3d 591, 603 (Pa. 2014) (citations omitted).

Appellant argues that the trial court should have permitted him to use the transcript of the telephone call as a prior inconsistent statement during his cross-examination of Ms. Kane. Appellant's Brief at 11. Appellant asserts:

By not permitting cross-examination about prior inconsistent statements the [trial c]ourt violated the Appellant's constitutional due process right to present a full and complete defense. The admissibility of the contents of these statements by Ms. Kane are critical in this appeal. The Appellant maintains that he, through counsel, should have been permitted to cross-examine Ms. Kane on the inconsistencies in the wire intercept with the trial testimony.

The defense theory was that the sexual contact between Ms. Kane and the Appellant was consensual. Defense counsel attempted to demonstrate that Ms. Kane, throughout the night in question, was able to articulate, act and carry herself in a manner inconsistent with being drunk, thus demonstrating that she was aware and consented to the sexual acts with the Appellant. In order to do this, defense counsel attempted to test the credibility of Ms. Kane's testimony. . . . At no point during her testimony did Ms. Kane ever state that she was sober when she was with the Appellant. However during the wire intercept she stated: "You got me drunk and had sex with me, when you know that I didn't want to have sex . . . while I was sober, I said that to you." Her statement from the wire intercept indicates that she was sober at some point with the Appellant prior to any sexual contact. This is an inconsistent statement and one that trial counsel should have been permitted to use for cross-examination. . . .

Also, during the wire intercept Ms. Kane was confronted with the fact that the Appellant had asked her if she wanted to have sex and she had verbally responded by saying "yes." Again, counsel should have been permitted the opportunity to cross-examine Ms. Kane with respect to this specific fact. . . .

Not allowing counsel the opportunity to cross-examine Ms. Kane about inconsistent statements, and ultimately test her credibility, violated the Appellant's due process rights.

*Id.* at 11-12. Appellant argues that his right to a fair trial was denied because the court improperly limited his ability to cross-examine Ms. Kane

under Pa.R.E. 611 and 613. *Id.* at 16-19.[4]

The trial court stated that it "thoroughly reviewed the transcript of the consensual call to determine if there are any inconsistent statements within the phone call or statements that are inconsistent with her trial testimony." Trial Ct. Op. at 8. The court said that it found no inconsistencies:

> It is determined that there are no inconsistent statements and that [Appellant]'s argument is without merit. Throughout this conversation, it was clear that the victim was consistent in stating that she did not know what happened. She confronted [Appellant] with the fact that he knew she was a virgin and she did not want to have sex. She was trying to get [Appellant] to tell her why he did it and questioned whether he used a condom and whether she could be pregnant. There were no inconsistent statements within the recorded call nor were her statements inconsistent with her trial testimony.

*Id.* at 12.

We agree with the trial court that the portions of the phone call that Appellant identified as inconsistent statements were not, in fact, inconsistent with Ms. Kane's trial testimony. We do not agree that a woman's statement that she is concerned about pregnancy or contracting a sexually transmitted

---

[4] Rule 611(b) states: "Cross-examination of a witness . . . should be limited to the subject matter of the direct examination and matters affecting credibility, however, the court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." Rule 613(a) states:

> A witness may be examined concerning a prior inconsistent statement made by the witness to impeach the witness's credibility. The statement need not be shown or its contents disclosed to the witness at that time, but on request, the statement or contents must be shown or disclosed to an adverse party's attorney.

disease is any way inconsistent with her contention that she was raped. Nor do we agree that Ms. Kane's failure to say the word "rape" on the recorded call is inconsistent with her testimony that she was raped. In fact, when a friend made comments to Ms. Kane that were inconsistent with Ms. Kane's contention that she was raped, Ms. Kane corrected her friend immediately. N.T., 4/18/16, at 158.

We also conclude that Appellant is not entitled to relief with respect to additional portions of the phone conversation that he identifies in his brief to this Court.[5] Appellant focuses on two additional portions of the conversation, and we shall address each separately.

The first of the additional phone call excerpts identified by Appellant does not relate to any statement by Ms. Kane, but rather to a statement by Appellant himself. Appellant argues: "Appellant had asked her if she wanted to have sex and she had verbally responded by saying 'yes.' . . . Counsel could have questioned her about being confronted with this fact by

---

[5] We question whether Appellant properly preserved his issue with respect to these additional statements, as he did not identify them in his argument to the trial court. "It is beyond cavil that if the ground upon which an objection is based is specifically stated, all other reasons for its exclusion are waived." **Commonwealth v. Hitcho**, 123 A.3d 731, 769 (Pa. 2015) (brackets and citation omitted). "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). The trial court never had the opportunity to rule on whether the specific statements currently challenged on appeal were prior inconsistent statements, since Appellant did not ask it to consider those statements. We find it unnecessary to decide this case on the basis of waiver, however.

Appellant and her response, or lack thereof." Appellant's Brief at 15.

Appellant's argument refers to the following excerpt from the recorded call:

> [Appellant:]     You told me, you're like, I wanna have sex[.]
>
> [Ms. Kane:]     When I was drunk?
>
> [Appellant:]     Like, I asked you, like, I asked you, like are you sure? And then you told me like the second time you weren't even drunk[.]
>
> [Ms. Kane:]     While I was . . . but I already . . . while I had been drinking, and after I had been drinking you asked me if I wanted to have sex and I said yes?

Tr. of Jan. 22, 2015 Consensual Call at 9. It is clear from this excerpt that it was **Appellant** who said that Ms. Kane consented to sexual intercourse, **not** Ms. Kane. Because this statement was not by Ms. Kane, it cannot be considered a prior inconsistent statement and Ms. Kane could not have been cross-examined about it. **See** Pa.R.E. 613(a) ("A witness may be examined concerning a prior inconsistent statement made **by the witness**").

Appellant appears to contend that Ms. Kane's "response, or lack thereof" to his assertion that she consented should be treated as a statement by Ms. Kane. **See** Appellant's Brief at 15. Appellant cites no authority in support of such a contention, and we know of none. In **Commonwealth v. Ragan**, 645 A.2d 811 (Pa. 1994), the Supreme Court of Pennsylvania stated:

> [i]f a witness had been under a duty to speak on a prior occasion, or *if it would have been natural for the witness to have spoken on such an occasion,* but the witness remained silent, the witness may be impeached by showing that the present

> testimony included a fact as to which he had been silent on a prior occasion.
>
> In the case at bar, defense witnesses Tyrone Simmons, Daniel Hunter, and Tameka Brown all testified that at the time they learned of appellant's arrest they had been aware that someone other than appellant had murdered Darren Brown. It would only seem natural that one in possession of such information would have immediately contacted the authorities in order to exculpate an individual who they supposedly knew was wrongly accused. Thus, the prosecution was entitled to impeach their credibility by bringing out the fact that they failed to take any such action.

*Id.* at 826 (emphasis in original; citations omitted). The facts of this case are not comparable to those in *Ragan*. Appellant did not ask Ms. Kane a question that would naturally elicit a statement like that at issue in *Ragan*. Rather, he told Ms. Kane that she had stated that she wanted to have sex with him, causing Ms. Kane to repeat that assertion back to him in the form of a question that sought clarification of what he claims to have happened and what he claims was her state of inebriation. Ms. Kane never expressed agreement with Appellant's assertion. *Cf. Commonwealth v. Parker*, 104 A.3d 17, 29 (Pa. Super. 2014) (holding a question is a statement if it includes an implied assertion), *appeal denied*, 117 A.3d 296 (Pa. 2015).

Appellant also challenges Ms. Kane's statements about her alcohol consumption and her level of intoxication. He explains:

> At trial, Ms. Kane testified that leading up to and including the entire sexual episode she was very drunk, in fact, as drunk as she has ever been in her lifetime. At no point during her trial testimony did Ms. Kane ever state that she was sober when she was with the Appellant. . . . That statement both impeaches her credibility as a witness, because it is inconsistent with her trial testimony, and the statement lends some support to the defense theory at trial that she, in fact, consented to the sexual acts.

- 20 -

Ms. Kane's statement during the wire intercept was that "You got me drunk and had sex with me, when you know that I didn't want to have sex...while I was sober, I said that to you" is an inconsistent statement and the trial court erred by not permitting counsel to cross-examine Ms. Kane about that specific statement.

. . . Not only does this specific statement contradict her testimony, but it would also lend some support to the defense theory that she wasn't very drunk and consented to the sexual acts with the Appellant. Throughout the trial, counsel attempted to demonstrate this fact by highlighting Ms. Kane's ability to effectively communicate with friends and other students in her dorm, physically move around her dorm and room, change clothes, meet Mr. Dukes and converse with him (including providing him with her telephone number), share text messages from Mr. Dukes with Ms. Urban and the Appellant, reply to the text messages from Mr. Dukes about his sexual advances towards her, have additional conversation with Ms. Senior and the Appellant and finally converse one-on-one with the Appellant.

. . . Ms. Kane testified at length about what she drank and how much she drank. For a significant portion of the night she was drinking without the Appellant even being around. . . . Again, her statement from the wire intercept is inconsistent with her trial testimony.

Appellant's Brief at 14-16.

The Commonwealth replies that Appellant's "argument is illogical. Defense counsel can point to no place in the transcripts of the wire intercept or the trial in which [Ms. Kane] stated she was sober at the time of the rape or that she consented to the sexual acts. . . . At best this is a collateral matter." Commonwealth's Brief at 19.

The first part of Ms. Kane's telephone statement that Appellant references — that Appellant "got [her] drunk," Tr. of Jan. 22, 2015 Consensual Call at 3 — is not inconsistent with her trial testimony. At trial,

Ms. Kane related how Appellant brought vodka to her room and gave her several shots of it, making her "very, very drunk." N.T., 4/18/16, at 129.

The second part of Ms. Kane's telephone statement that is highlighted by Appellant — her statement that she told Appellant she did not want to have sex "while [she] was sober," Tr. of Jan. 22, 2015 Consensual Call at 3 — requires closer examination. As Appellant points out, Ms. Kane testified during trial that she was intoxicated throughout the evening of January 21, 2015 and the following morning. N.T., 4/18/16, at 114-15, 125. On careful review, however, we do not find the stark inconsistency that Appellant posits.

First, as the Commonwealth points out, there is no inconsistency in Ms. Kane's statements that she was intoxicated at the time Appellant sexually penetrated her. At trial, she testified that by that time she was so intoxicated that her body went limp, her thoughts were disconnected, and she went in and out of consciousness. N.T., 4/18/16, at 142, 145, 147, 151-53. In the phone call, Ms. Kane told Appellant, "You did it to me . . . while I was drunk." Tr. of Jan. 22, 2015 Consensual Call at 6.

Appellant's contention is that Ms. Kane's telephone statement that she told Appellant "while [she] was sober" about her preference to remain a virgin raises questions about whether she also was sober (or, at least, sufficiently sober to consent) at the time he penetrated her. But nothing in Ms. Kane's telephone statement contradicts her trial testimony that her inebriation increased as the night progressed. Although Ms. Kane stated at

- 22 -

trial that she was drunk from the time when she visited Mr. Claycomb and Mr. Massaro in their dorm room, she also testified that at that time she was "still walking and talking" and "[k]new what [she was] doing." N.T., 4/18/16, at 97. When she later returned to her own room and Appellant asked her if she wanted more to drink, she "said, yes, because [she] didn't think [she] was as drunk as [she] was, in retrospect." *Id.* at 126. It was around this time, before imbibing Appellant's vodka, that Ms. Kane discussed her desire to preserve her virginity. *See id.* at 80, 85, 114-16; N.T., 4/20/16, at 45-46. The sexual intercourse happened later, after Appellant gave Ms. Kane "at least more than three shots" of vodka and she passed out. N.T., 4/18/16, at 126-27, 129; N.T., 4/19/16, at 50, 59, 63. Appellant's telephone statements were consistent with this course of events. That her telephone call characterized her state at the time she expressed her virginity preference as "sober" while at trial she said she was intoxicated but "still walking and talking" and with knowledge of "what [she was] doing" does not present such an inconsistency as to make the trial court's exclusion of the evidence an abuse of discretion, and we see no violation of Appellant's due process rights in the trial court's ruling. We note that Appellant did not even make this argument about an inconsistency in Ms. Kane's statements regarding her degree of inebriation when he sought to use the phone call transcript in the trial court. *See* N.T., 4/19/16, at 5, 8, 88-89.

Moreover, insofar as the evidentiary ruling affected Appellant's ability to test Ms. Kane's credibility in testifying that she was intoxicated when the

- 23 -

sexual penetration took place, we believe any error was harmless. All the witnesses corroborated Ms. Kane's testimony that she became increasingly intoxicated as that evening progressed. Ms. Senior, Mr. Claycomb, Mr. Adams, and Ms. Urban testified that Ms. Kane was extremely intoxicated on the night in question, with her outward signs of intoxication including a lack of coordination, falling down, and slurring her words. N.T., 4/19/16, at 122, 261-66, 305-06, 320; N.T., 4/20/16, at 78. They said she nevertheless was lucid when discussing her sexual preferences, telling Appellant that she did not want to have sexual relations. N.T., 4/20/16, at 45-46, 84. But Ms. Urban testified that she then witnessed Appellant having intercourse with Ms. Kane while Ms. Kane was immobile and unresponsive. *Id.* at 83, 91-93. Ms. Urban also asserted that Ms. Kane, upon regaining consciousness, was upset and confused, said she did not know what had happened, and, as soon as she realized that Appellant had had sexual relations with her, told Ms. Urban that she had not wanted to have intercourse. *Id.* at 95-96.

"The accused is entitled to a fair trial, not a perfect trial." *Commonwealth v. Rasheed*, 640 A.2d 896, 898 (Pa. 1994). As the Supreme Court explained in *Commonwealth v. Story*, 383 A.2d 155 (Pa. 1978):

> [A]n error may be harmless where the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict. . . . Once the court determines that the evidence of

guilt is overwhelming, it then decides if the error was so insignificant by comparison that it could not have contributed to the verdict.

*Id.* at 166; *see also Commonwealth v. Jacoby*, __A.3d__, 2017 WL 4287343, \*13-\*14 (Pa., Sept. 28, 2017); *Rasheed*, 640 A.2d at 898. Based on our review of the record, we conclude that any error that may have occurred based upon the trial court's exclusion of the phone conversation and resulting restriction of Appellant's ability to cross-examine Ms. Kane about her degree of intoxication throughout the evening preceding the crime was harmless. The properly admitted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict. *See id.* Appellant is therefore not entitled to relief.

Judgment of sentence affirmed.

Judge Olson joins the memorandum.

Judge Musmanno files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/16/2017